UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

NORMAN DENNIS WOODARD,

        Plaintiff,

v.

UNKNOWN MILLER et al.,

        Defendants.
_____/

Case No. 2:24-cv-2

Honorable Maarten Vermaat

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, Plaintiff has been granted leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following AMF personnel: Inspector Unknown Miller, Inspector Unknown Minerick, Prison Counselor/ARUSH Unknown Bastian, Resident Unit Manager Unknown Nurkala, and Warden Nathan Hoffman.

Plaintiff's claims relate to Plaintiff's security threat group (STG) status, which Plaintiff identifies as STG II. (ECF No. 1, PageID.3, 4.) A security threat group is defined under MDOC

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Policy as "a group of prisoners designated by the Director as possessing common characteristics that distinguish them from other prisoners or groups of prisoners and that, as an entity, pose a threat to staff or other prisoners or to the custody, safety and security of the facility." Mich. Dep't of Corr. Policy Directive (PD) 04.04.113(B) (eff. Sept. 18, 2023); *see also* PD 04.04.113(B) (eff. Dec. 30, 2021).[2]

A prisoner may be designated as "STG I" by the local STG Coordinator if there is sufficient documentation of the prisoner's membership in the STG and the prisoner fails to make a credible renunciation of his membership. PD 04.04.113(S). A prisoner may be designated an "STG II" if: (1) he is an STG I member and is found guilty of major misconduct related to his STG activity, (2) was previously an STG I member, and currently presents a threat to prisoners or staff due to STG activities, or (3) is identified as a leader, enforcer, or recruiter in an STG. PD 04.04.113(W). A prisoner designated as an STG II member must be housed in security level IV or higher. PD

---

[2] Plaintiff's reference to his "S.T.G. status," (Compl., ECF No. 1, PageID.3), is a reference to that status as it is defined in the MDOC policy directive. The MDOC's policy directives are a proper subject of judicial notice under Fed.R.Evid. 201(b). *See Toth v. Grand Trunk R.R.,* 306 F.3d 335, 349 (6th Cir. 2002) ("Administrative regulations fall within the category of facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned'"); *see also International Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Zantop Air Transp. Corp.,* 394 F.2d 36, 40 (6th Cir. 1968) ("a Court may take judicial notice of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority"). The Court takes judicial notice of the versions of those policy directive in effect at the time of the events alleged in Plaintiff's complaint. *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 568 n.13 (2007) (noting that the district court "was entitled to take notice of the full contents of the published articles referenced in the complaint"); *Nixon v. Wilmington Trust Co.*, 543 F.3d 354, 357 n.2 (6th Cir. 2008) (noting that "a court may consider a document not formally incorporated by reference in a complaint when the complaint refers to the document and the document is central to the claims"). "The court may take judicial notice at *any* stage of the proceeding." Fed. R. Evid. 201(d) (emphasis added). Thus, the Court may take judicial notice even at this early juncture because the Court is permitted to take judicial notice *sua sponte*, Fed. R. Evid. 201(c)(1), and "the fact is not subject to reasonable dispute," Fed. R. Evid. 201(b). The content of the policy directive at issue is not subject to reasonable dispute. It is published by the MDOC on its publicly available government website. *See* https://www.michigan.gov/corrections/public-information/statistics-and-reports/policy-directives (last visited Mar. 6, 2024).

04.04.113(Z). STG II members are also subject to the following restrictions: prisoners are generally limited to two non-contact visits per month (the limit does not apply to counsel or clergy); classification to a school or work assignment only as approved by the EMS manager; no attendance at group meetings of prisoners, except for approved religious services; no participation in group leisure time activities, except for yard/dayroom; cell search at least once per week; out-of-cell movement not to exceed one hour per day, excluding showers, meals, work, etc. PD 04.04.113(CC).

Plaintiff alleges that, in order to be eligible for parole, Plaintiff must participate in an "A.S.A.T. Program," which is not offered at AMF. (ECF No. 1, PageID.3.) However, Plaintiff claims that Defendants have refused to transfer Plaintiff to another facility because of Plaintiff's STG status. (*Id.*) Specifically, on March 13, 2023, Plaintiff asked Defendant Miller about the status of kites that Plaintiff had submitted. (*Id.*) Defendant Miller responded by telling Plaintiff, "Stop sending me kites[.] You are a gangbanger[.] You don't deserve to be in society." (*Id.*) On August 16, 2023, Defendant Nurkala told Plaintiff, "We are going to keep you right here. The world is a safe place without you black gangbanger n***as running around." (*Id.*)

On September 20, 2023, Plaintiff submitted a grievance against Defendant Bastian related to "the issue." (*Id.*) Thereafter, on December 8, 2023, non-party Corrections Officer Lorendo issued Plaintiff a misconduct report for the destruction or misuse of property, telling Plaintiff that he was going to keep Plaintiff at AMF as long as possible because Plaintiff is a "gangbanger." (*Id.*)

Plaintiff has also asked Defendant Bastian for a security reclassification, claiming that Plaintiff's original classification was incorrect. (*Id.*, PageID.4.) Defendant Bastian refused because Plaintiff was STGII and had Level V points. (*Id.*) Plaintiff sent a kite to Defendant Nurkala;

5

however, on August 28, 2023, Defendant Nurkala told Plaintiff that she may have thrown the kite away. (*Id.*)

Plaintiff alleges that "the administration" refuses to take Plaintiff off of "STG status" or lower his status, and that every time that Plaintiff submits a grievance, "someone here at Baraga" tries to keep Plaintiff longer. (*Id.*, PageID.3.) Plaintiff alleges that Defendants actions are retaliatory and violate Plaintiff's "liberty interest." (*Id.*, PageID.3–4.) He seeks nominal, compensatory, and punitive damages. (*Id.*, PageID.5.)

## II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

6

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff contends that Defendants have violated his First Amendment and Fourteenth Amendment rights.

### A. Defendant Minerick

Plaintiff names Defendant Minerick in the case caption and in the list of parties; however, he makes no factual allegations against him.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant);

7

*Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Because Plaintiff's claims fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), he fails to state a claim against Defendant Minerick.

### B. Defendant Hoffman

Plaintiff includes Hoffman in the caption and in the list of parties. In the factual allegations, with regard to Hoffman, Plaintiff states only this: "I requested an S.G.T. and still nothing. Defendant Hoffman stated you can file a lawsuit. We'll see how far that gets you." (Compl., ECF No. 1, PageID.3.) Plaintiff's brief allegation regarding Hoffman offers no clue as to how Hoffman was involved in the interference with Plaintiff's "liberty interest" or in any retaliation. Thus, with Defendant Hoffman as well, because Plaintiff's allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), he fails to state a claim against Defendant Hoffman.

### C. Supervisory Liability

Moreover, to the extent that Plaintiff intended to hold Defendants Minerick and Hoffman liable due to their supervisory positions, government officials, such as these Defendants, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532

8

F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Therefore, to the extent that Plaintiff seeks to hold these Defendants liable simply due to their supervisory positions, Plaintiff's conclusory allegations of supervisory responsibility are insufficient to show that these Defendants were personally involved in the alleged violations of Plaintiff's constitutional rights.

### D.     First Amendment

Plaintiff alleges that Defendants retaliated against Plaintiff in violation of Plaintiff's First Amendment rights. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

#### 1.     Protected Conduct

Here, Plaintiff's retaliation claims implicate two distinct categories of conduct protected by the First Amendment: the freedom to associate and the freedom to petition the government for redress of grievances.

### a. Freedom to Associate

To state a claim for First Amendment retaliation, Plaintiff must first allege facts that would plausibly suggest that Plaintiff was engaged in conduct protected by the First Amendment In claiming that Defendants retaliated against Plaintiff based upon Plaintiff's STG status, Plaintiff appears to claim that his STG status is protected by Plaintiff's First Amendment right to freedom of association. He is mistaken. Plaintiff has no First Amendment right to associate with a security threat group while incarcerated.

Prison inmates do not retain those First Amendment rights that are "inconsistent with [their] status as [prisoners] or with the legitimate penological objectives of the corrections system." *Jones v. N. Carolina Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 129–33 (1977) (*citing Pell v. Procunier*, 417 U.S. 817, 822 (1974)). Prisons obviously differ from free society in that they are populated, involuntarily, by people who have been found to have violated one or more of the criminal laws established by society for its orderly governance. *Id.* The United States Supreme Court has repeatedly recognized the need to place major restrictions on (1) the rights of prisoners in order to accommodate institutional needs and objectives and (2) provisions of the Constitution that are of general application, including situations in which First Amendment rights are implicated. *Id.* Freedom of association is among the rights least compatible with incarceration. *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (*citing Jones,* 433 U.S. at 125–126)).

To determine whether prison regulations are reasonably related to a legitimate penological interest, the Court must assess the restriction by reference to the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready

10

alternatives available that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. *Turner v. Safley*, 482 U.S. 78, 89–90 (1987). Applying this standard, the Supreme Court has upheld a variety of limitations on First Amendment protections. *See Shaw*, 532 U.S. at 229 (holding that prisoners do not have a First Amendment right to provide legal assistance to other prisoners) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)) (sustaining proscriptions on media interviews); *Thornburgh v. Abbott*, 490 U.S. 401, 419 (1989) (applying *Turner* standard to a prison ban on certain publications); *Turner*, 482 U.S. at 93 (restricting inmate-to-inmate correspondence); *see also Jones*, 433 U.S. at 133 (upholding prohibition on prisoner labor unions).

The defining characteristic of an STG is that it poses "a threat to staff or other prisoners or to the custody, safety and security of the facility." PD 04.04.113(B). Despite that threat, the MDOC does not forbid membership in an STG, it simply creates restrictions for members—the same sort of restrictions that go with higher security classifications. As the Sixth Circuit Court of Appeals noted in *Ford v. Harvey*, 106 F. App'x 397 (6th Cir. 2004), "Ford's designation as a "Security Threat Group Member" is nothing more than a security classification used by the prison." *Id*. at 399. In *Harbin-Bey v. Rutter*, 420 F.3d 571 (6th Cir. 2005), the Sixth Circuit determined that "[t]he MDOC's policy directive regarding the classification of inmates as STG members is rationally related to the legitimate state interest of maintaining order in the prison." *Id.* at 576. Whatever right to freedom of association that Plaintiff retains as an incarcerated person, he "does not have a constitutional right to be placed in a specific security classification." *Id*. Therefore, his STG status is not "protected conduct" that might serve as the foundation for a retaliation claim.

### b. Kites and Grievances

Unlike membership in an STG, the filing of a nonfrivolous prison kite or grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415

11

(6th Cir. 2000). However, even assuming that Plaintiff satisfied the first element of a claim for retaliation, he provides the Court with no facts that would plausibly suggest that the actions of Defendants in refusing to transfer Plaintiff or change Plaintiff's STG status were because of Plaintiff's protected conduct.

Moreover, Plaintiff has not identified an adverse action that followed his kites and grievances. The only thing any of the Defendants did was maintain the status quo. Plaintiff expresses his desire to complete the A.S.A.T Program. That program is not available at every MDOC correctional facility. *See* https://www.michigan.gov/corrections/-/media/Project/ Websites/corrections/LG/OS-Program-Availability-122.pdf (last visited Mar. 6, 2024). Indeed, it is only available in Security Levels I and II. Plaintiff is presently housed in Security Level V. MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis2profile. aspx?mdocNumber=650305 (last visited Mar. 6, 2024). Other than Plaintiff's desire to complete the program, he offers no facts and no rational explanation for how he would be entitled to be reduced to such a low security level. Absent some basis to conclude that maintaining the status quo was inappropriate, Plaintiff's allegation that Defendants would not lower his security level does not constitute adverse action.

Even if keeping Plaintiff at his present security level could be considered adverse action, Plaintiff has not alleged facts that support an inference that Defendants chose not to act because Plaintiff sent kites and filed grievances. Defendant Miller said he would not act to help Plaintiff because he was a "gangbanger"—an STG member. (Compl., ECF No. 1, PageID.3.) Defendant Nurkala said she would not act to help Plaintiff because he was a "gangbanger." (*Id*.) Defendant Bastian would not assist Plaintiff in lowering his security level because Plaintiff was "STG 2 status

with level 5 points." (Id., PageID.4.) Stated differently, Defendant Bastian said that he would not help because Plaintiff was at the correct security level.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey*, 420 F.3d at 580; *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). However, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis* v. *Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Plaintiff merely alleges the ultimate fact of retaliation when it comes to his claim of retaliation based upon Plaintiff's kites and grievances. Simply because Plaintiff's grievances and kites preceded comments by Defendants Miller and Nurkala and Defendant Bastian's refusal to change Plaintiff's security classification does not automatically show retaliation, particularly in light of the Defendants' stated proper motive for their inaction. See *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance alone is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"); cf. *Skinner v. Bolden*, 89 F. App'x

13

579, 580 (6th Cir. 2004) (noting that "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive").

Plaintiff asks the Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim. It is Plaintiff's obligation at this stage in the proceedings to plead enough factual content to permit the Court to draw a reasonable inference that Defendants retaliated against Plaintiff because of Plaintiff's First Amendment protected conduct. *See Iqbal*, 556 U.S. at 679. Plaintiff has not satisfied that obligation.

To sum up, Plaintiff's STG status is not protected conduct but his kites and grievances are. Plaintiff has not identified any adverse action that followed his protected conduct because Plaintiff has not alleged any facts to support an inference that there was any reason to lower Plaintiff's security level. Finally, Plaintiff has not alleged facts to support the necessary inference that, if there was adverse action, that it was motivated by his protected conduct. Plaintiff has failed to state a First Amendment retaliation claim.

### E. Fourteenth Amendment

Plaintiff claims that his designation as "S.T.G.2" violates his Fourteenth Amendment right to due process. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient. . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

14

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Prisoners retain a liberty interest with respect to state-imposed prison discipline that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Plaintiff does not state a violation of his due process rights. Plaintiff does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486. Moreover, the Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum*, 427 U.S. at 244. Relying on *Sandin,* the Sixth Circuit has held that a Michigan prisoner can no longer claim a liberty interest in his security classification. *See Harbin-Bey,* 420 F.3d at 577; *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995); *accord Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997). Plaintiff's designation as a STG member is nothing more than a security classification used by the prison. *Harbin Bey*, 420 F.3d at 577. Because Plaintiff does not have a liberty interest in a particular security level or classification, he fails to state a due process claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore*, 114 F.3d at 611. Although the Court concludes that Plaintiff's claims are properly

dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:  March 15, 2024                              /s/ *Maarten Vermaat*
                                                    Maarten Vermaat
                                                    United States Magistrate Judge